Isidob. Wassebvogel,
Spec. Ref. Plaintiff seeks to recover the sum of $100,000 from defendants on the ground that they conspired to destroy the good will, reputation and business of her dance studio and deprived her of the means of earning a livelihood as a ballroom dancing instructor.
Despite the astronomical figure fixed by plaintiff as the amount of damages she allegedly sustained, the facts, as set forth in her complaint, are relatively simple. On or about February 1, 1954, plaintiff leased for a two-year term certain premises from defendant Luskin, to be used by her as a dance studio for the teaching of ballroom dancing. Plaintiff alleges that on or about August 20, 1954, with the knowledge and consent of Luskin, she and defendant Muller entered into a “joint venture” whereby Muller was to use the studio premises and equipment during certain fixed hours of the day to teach and instruct young children in ballet dancing. Plaintiff maintains that in or about December, 1955, Luskin orally agreed to extend the term of the written lease to December 1, 1956. It is plaintiff’s contention that despite the purported fiduciary relationship between her and Muller, prior to the expiration of such extended lease, Muller ‘ ‘ went behind her back ” and obtained Luskin’s commitment to lease the entire premises to her and to cause plaintiff to remove her dance studio therefrom. Plaintiff contends that notwithstanding his oral extension of her lease, and in furtherance of the alleged conspiracy between the defendants, Luskin instituted summary ‘ ‘ holdover ’ ’ proceedings in Municipal Court to remove her from the premises. Plaintiff further alleges that Luskin induced her to withdraw her defense to this proceeding and to consent to vacate the premises by falsely representing that the dance studio would not be leased to Muller or to any other competitor of plaintiff, when, in fact, Luskin had already agreed to rent said premises to Muller. It is plaintiff’s contention that this agreement between defendants for the leasing of the premises and the summary proceedings instituted by Luskin were part of a planned conspiracy by them to destroy her business and good will, for which she seeks damages herein.
Plaintiff’s rights in this action are dependent upon the existence of some confidential relationship between her and Muller. In the absence of such relationship, it would necessarily follow that despite the unethical business conduct in ‘ ‘ going behind plaintiff’s back,” Muller had the legal right to negotiate *966 a lease with Luskin to take effect on the expiration of plaintiff’s lease or wiien she otherwise vacated the premises (Thayer v. Leggett, 229 N. Y. 152, 158; Mitchell v. Reed, 61 N. Y. 123, 142). Contrary to plaintiff’s contention, however, nothing in the record warrants the conclusion that she and Muller entered into a joint venture or that any other fiduciary relationship existed between them.
At best, the credible testimony and documentary evidence establish that a relationship of landlord and tenant existed between plaintiff and Muller. All that occurred here was a subleasing of plaintiff’s premises to Muller for the operation therein by each of them of two separate and distinct businesses, to be conducted by each of them at different, specified hours, with different clientele, for different purposes. The record shows that plaintiff initially invested approximately $3,500 to equip and prepare the premises for use as a ballroom dancing studio. Significantly, no capital was invested by defendant. The agreement between plaintiff, as landlord, and Muller, as tenant, only called for stipulated monthly rental payments, plus a charge for “ overtime ” use of the studio. In contrast to plaintiff’s contention that a joint venture was entered into between her and Muller, the record shows that whenever the whim seized plaintiff, she increased Muller’s rent, which finally reached an amount in excess of that which plaintiff herself was obligated to pay Luskin as landlord under the prime lease. These rental payments by Muller to plaintiff are clearly not consonant with plaintiff’s claimed relationship of joint venturers.
Moreover, it is to be noted that there was no agreement between plaintiff and Muller to share profits or losses. Each paid for the expenses of her own respective business. Each maintained her own personal bank account. Neither had access to the other’s checkbook, checks, bank statements, or deposits. Neither had any rights with respect to the other’s bank accounts nor was there any proof that they consulted each other on plans for the operation of their respective businesses. Prom the foregoing facts, it is apparent that no joint venture or partnership of any kind existed between the parties. As heretofore stated, there was a mere agreement to sublet or license the dance studio to Muller for a particular use, which agreement was surrounded by obligations on the part of each party which very clearly indicate and define the separate financial and business interests of each of them.
Unlike the cases cited by plaintiff in briefs submitted to the court after trial, there is no fiduciary or other confidential *967 relationship between plaintiff and Muller that would warrant the court in granting the relief she seeks in this action. All plaintiff and Muller had in common was the use of the same dance studio. That, in and of itself, does not constitute a joint venture. Thus, in the absence of any credible evidence to show a community or sharing of funds between plaintiff and Muller, or any agreement between them to divide or apportion capital investment, surplus, profits, losses, or expenses of operation, the conclusion is inevitable that these parties themselves intended to and did maintain only a relationship of landlord and tenant and not joint venturers as alleged in the complaint. It necessarily follows that Muller, being in no fiduciary or other confidential relationship with plaintiff, as her immediate landlord, had a clear legal right, if not moral right, to negotiate secretly with Luskin and to obtain a lease for herself, especially inasmuch as plaintiff Avas being dispossessed by Luskin as a holdover tenant (Thayer v. Leggett, 229 N. Y. 152, supra; also Mariani v. Summers, 3 Misc 2d 534, 537-538, affd. 269 App. Div. 840).
The ease of Levine v. Goldberg (2 A D 2d 409), relied upon by plaintiff as “ being on all fours ” with the case at bar is clearly distinguishable and not applicable. Unlike the instant action, in the cited ease, both litigants, Avho were lawyers, had jointly entered into the lease for the premises with the OAvner thereof. This important factor of joint liability does not exist in the action before this court.
Upon the evidence before me, therefore, I hold that no cause of action in conspiracy was established by plaintiff against either defendant. The gravamen of this action is the alleged illegal act by defendant Muller in obtaining a direct lease from Luskin Avithout plaintiff’s knowledge or consent. The fact that in so doing Muller was merely asserting her legal rights requires the dismissal of the complaint despite the fact that plaintiff may have been damaged by such conduct (Cohen v. Fisher & Co., 135 App. Div. 238; Hyman v. Fischer, 184 Misc. 90). In any event, there is no proof that Luskin had any knowledge of the purported joint venture or that he fraudulently induced plaintiff to vacate the premises here involved. As prime landlord, Luskin rightfully exercised his privilege to refuse to reneAv plaintiff’s lease and to enter into a new lease for the dance studio Avith Muller.
Judgment is rendered, accordingly, in favor of defendants dismissing the complaint upon the merits.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.